# COMMISSIONER OF TRANSPORTATION *v.* BAKERY PLACE LIMITED PARTNERSHIP ET AL.
## (AC 23981)

Schaller, Dranginis and McLachlan, Js.

Argued February 20—officially released June 15, 2004

*Robert Deichert*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Jane R. Rosenberg* and *Lawrence G. Widem*, assistant attorneys general, for the appellant (plaintiff).

*Michael P. Barry*, for the appellee (named defendant).

*Opinion*

DRANGINIS, J. In this condemnation action, the plaintiff, the commissioner of transportation (commissioner), appeals from the judgment of the trial court rendered in favor of the defendant Bakery Place Limited Partnership (defendant).[1] On appeal, the commissioner claims that the court improperly (1) took judicial notice of the fact that asbestos in the property acquired by eminent domain could have been encapsulated at a lower cost than demolishing the building and (2) determined the fair market value of the condemned property on the basis of a five year old municipal property tax assessment. We reverse the judgment of the trial court.

Vincenzo Miceli and Valerie Miceli operated a bakery at 648 Main Street in New Britain from 1974 until they sold the business in 1989, retaining ownership of the property. In 1985, the Micelis formed a partnership known as Bakery Place Limited Partnership and purchased property adjacent to the bakery located at 634-640 Main Street, New Britain, which is the subject of this appeal. The defendant's newly acquired property consisted of a 6394 square foot parcel of land with a vacant three story building that was constructed in 1886. The defendant purchased the property to expand its bakery business. Shortly after preparing the building

---

[1] The other defendants in this action are the city of New Britain and Michael A. Zizka. Those defendants are not involved in this appeal, and we refer in this opinion to Bakery Place Limited Partnership as the defendant.

for renovation,[2] Vincenzo Miceli became ill and construction was halted. On June 7, 2000, the commissioner paid the defendant $1 to acquire the property on 634-640 Main Street by eminent domain in order to make highway safety improvements. The defendant appealed to the Superior Court.[3]

The dispute before the court involved the cost of demolishing the building at the time of the taking. Prior to the condemnation of the property, the defendant's appraiser, Matthew Welinsky, appraised the property and found that the highest and best use of the property, after the demolition of the building, was to keep it as vacant land. Using the comparable sales method, he concluded that the fair market value of the vacant land was $13,000. Welinsky, referring to the Marshal Valuation Service on demolition and removal of hazardous material, calculated the cost of demolition to be $8000. He determined that the fair market value of the land was $5000.

Likewise, the commissioner's appraiser, John Nitz, concluded that the highest and best use of the property was vacant land. He also valued the property at $13,000. On the basis of his assumption that asbestos was present in the building,[4] Nitz calculated that the cost of

[2] The building was completely gutted. The contractor removed the walls, staircases and ceilings, plumbing, heater and water meter, and excavated the basement floor. The building subsequently was boarded up. Those facts are relevant to the court's finding regarding the existence and remediation of asbestos because there was no indication that the contractor dealt with the issue of asbestos as part of the interior demolition.

[3] The defendant's appeal to the Superior Court concerned the properties located at 648 Main Street and 634-640 Main Street. The court consolidated the two actions. This appeal addresses only the property located at 634-640 Main Street.

[4] "Asbestos includes any of several fibrous minerals that commonly were used as insulation until it was discovered that the inhalation of asbestos fibers may cause a variety of lung diseases, including cancer." *Petco Insulation Co.* v. *Crystal,* 231 Conn. 315, 317, 649 A.2d 790 (1994). It is commonly found in older buildings.

asbestos removal and demolition of the building would total $17,096, which would leave the market value of the property at a $4000 loss. In addition to Nitz' testimony as to the value of the property before condemnation, the commissioner offered the expert testimony of Eric Plimpton, a licensed professional engineer. Plimpton, who reviewed the invoices from the demolition of the building on the property,[5] testified that the actual cost to demolish the building was $35,208 and $22,334 to remove the asbestos for a total cost of $57,542.

In its memorandum of decision, the court relied on the following facts to determine the fair market value of the property. In October, 1995, the New Britain assessor revalued the property and determined that its fair market value was $37,840. The defendant paid the real estate taxes based on the fair market value of the property for the next five years. The assessor's street card listed the property's income as $80,300. Using the cost approach, the city determined that the value of the land as vacant was $27,550 and the building was $10,290 for a total value of $37,840. The city used the cost approach of $37,840, not the income approach at $80,300, to determine the fair market value of the subject property. The assessor's street card showed that the building in 1988 was uninhabitable and therefore incapable of producing income. That assessment remained unchanged until the date of the taking. The court concluded that the city's revaluation in 1995 of the building at $10,290 took into account the existing condition of the property.

The court further concluded that "[n]either Welinsky, Nitz nor Plimpton made any credible contribution regarding the existence of asbestos or the extent of asbestos in the building. From the presentation of evidence, we can assume the presence of asbestos in the

[5] The asbestos was removed between February and March, 2001. The building subsequently was demolished between May and June, 2001.

building, but cannot determine the extent of the asbestos in the building. Our general experience is that asbestos insulation used to insulate heating ducts in older buildings may be encapsulated to prevent harm from asbestos as an alternative to removal." The court rejected the appraisers' opinions that the highest and best use of the property was as vacant land and instead concluded that the value of the property would be maximized by encapsulating the asbestos rather than demolishing the premises at a substantial loss. The court also noted that the cost of encapsulation is minimal compared to the cost of asbestos removal.

The court rendered judgment in favor of the defendant "in the amount of $37,840, less the sum of $1 paid by the [commissioner] plus statutory interest at the rate of 10 percent as provided in General Statutes § 37-3a, from the date of taking." The court subsequently denied the commissioner's motion for reconsideration. This appeal followed.

I

The commissioner first claims that the court improperly took judicial notice of the fact that asbestos in the property acquired by eminent domain feasibly could be encapsulated at a lower cost than demolishing the building. Specifically, the commissioner argues that the court's conclusion in its memorandum of decision, without evidence, that "[o]ur general experience is that asbestos insulation used to insulate heating ducts in older buildings may be encapsulated to prevent harm from asbestos as an alternative to removal" was improper.[6] The commissioner contends that whether asbestos in the building could be safely and economi-

---

[6] There is no evidence in the record to support the court's underlying inference that there was asbestos in the building. Apparently, all plumbing and heating improvements had been removed. See footnote 2.

cally contained was not a proper subject for judicial notice. We agree.

"Courts may take judicial notice of matters which come to the knowledge of men generally in the course of the ordinary experience of life, and are therefore in the mind of the trier, or they may be matters which are generally accepted by mankind as true and are capable of ready and unquestionable demonstration. . . . Facts which are of common knowledge, that is, facts so well known that evidence to prove them is unnecessary are proper subjects of judicial notice." (Citations omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 442, 671 A.2d 1303 (1996).

"The doctrine of judicial notice is not a hard and fast one. It is modified by judicial discretion. . . . Courts are not bound to take judicial notice of matters of fact. . . . Thus, a trial court's determination [to take or] not to take judicial notice is essentially an evidentiary ruling. . . . Our role in reviewing evidentiary rulings of the trial court is settled. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 77 Conn. App. 818, 826, 827 A.2d 1 (2003).

The defendant claims that the court did not take judicial notice of the cost of encapsulation over the cost of demolition, but was simply explaining its reasons for rejecting the appraisers' testimony regarding the cost of removing the asbestos. The defendant argues that "[t]he court was stating that the cost of encapsulation may have made demolishing the building not its highest and best use because such high remediation and demolition costs would be unnecessary by rehabilitating the premises." We are not persuaded.

In reviewing the transcript, we did not find any testimonial evidence concerning the cost of encapsulation to support the defendant's claim. In fact, the court did not allow the defendant to elicit testimony from Nitz regarding the effect that the cost of encapsulation would have on the value of the building.[7] Without giving notice to the parties, the court, in its memorandum of decision, took judicial notice of the cost effectiveness of encapsulating asbestos as opposed to removing it. We have repeatedly stated that a "trial court must give the parties an opportunity to be heard prior to taking such notice." *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership,* supra, 40 Conn. App. 442. Under these circumstances, "[l]ack of notice prevents a party from disputing the judicially noticed fact." Id.

The cost of asbestos removal or encapsulation is not a subject that one encounters in the ordinary course of life. Whether it was more cost effective to encapsulate the asbestos than to remove it is not a proper subject matter of judicial notice. See id. ("whether a substituted interest rate is reasonable is not the proper subject matter of judicial notice"). Accordingly, we conclude that the court abused its discretion by taking judicial notice of the cost effectiveness of encapsulating asbestos as opposed to removing it without giving the parties notice of its intention to do so.

---

[7] The following colloquy occurred at trial:

"[Defendant's Counsel]: The building was not going to be knocked down, and you were going to encapsulate it for a dollar per square foot, as opposed to abating it for $14 per square foot. Would that have any effect on your opinion as to the value of the building?

"[Plaintiff's Counsel]: Objection. Lack of foundation. Both appraisers have testified the highest and best use is to demolish the building. The owner's testified that his intent was to demolish the building.

\* \* \*

"The Court: . . . [A]ren't you speculating at this point in time? There's no evidence that anybody was going to wrap this building up in some kind of a form and not use it. There was only testimony of demolition or leave it alone. But I'll sustain the objection."

## II

The commissioner next claims that the court improperly determined the fair market value of the condemned property on the basis of a five year old municipal property tax assessment. We agree.

The commissioner's claim involves the issue of valuation. "Valuation is a matter of fact to be determined by the trier's independent judgment. . . . Because this is a challenge to the court's finding of facts, we apply the clearly erroneous standard of review. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *New London* v. *Picinich,* 76 Conn. App. 678, 685, 821 A.2d 782, cert. denied, 266 Conn. 901, 832 A.2d 64 (2003).

In determining the value of a condemned property, "[t]he general rule . . . is that the proper measure of damages is . . . the market value of the property as improved, in view of all the uses to which it is adaptable and available." (Internal quotation marks omitted.) *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 414, 270 A.2d 549 (1970). Essentially, we apply the highest and best use approach in valuing the property. "A property's highest and best use is commonly accepted by real estate appraisers as the starting point for the analysis of its true and actual value. . . . [U]nder the general rule of property valuation, fair [market] value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land. . . . A property's highest and best use is commonly defined as *the use that will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular*

*piece of real estate.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 25, 807 A.2d 955 (2002).

The defendant argues that the court reasonably relied on the evidence of the assessed value of the assessor's calculations in determining the fair market value of the property.[8] That argument is misplaced. We recognize that "[i]n determining fair market value, the trial court is free to select the method of valuation most appropriate to the case before it." *D'Addario* v. *Commissioner of Transportation*, 180 Conn. 355, 365, 429 A.2d 890 (1980). That discretion, however, is not absolute.

Here, the court did not use the highest and best use approach, or any alternative valuation method to calculate the fair market value of the property. Instead, it relied on the assessed value set forth on the assessor's field card that was attached to one of the appraisal reports to award the sum of $37,840. "It is almost everywhere the law that the value placed upon a parcel of land for the purposes of taxation by the assessors of the town in which it is situated is no evidence of its value for other than tax purposes." 5 P. Nichols, Eminent Domain (3d Ed. Rev. 2003, J. Sackman ed.) § 22.1, p. 22-1; see *Connecticut Printers, Inc.* v. *Redevelopment Agency of Hartford*, supra, 159 Conn. 407. Moreover, "[i]t has been held . . . that the amount of taxes, as a derivative of the assessed value, is . . . inadmissible as evidence of value in eminent domain." 5 P. Nichols, supra, pp. 22-18 through 22-19. Under the facts of this case, the court improperly used the assessed value to calculate the fair market value of the defendant's property.

[8] The court rejected the evidence offered by both experts as to asbestos removal and remediation insofar as it did not reflect cost at the time of the taking. See Public Acts 2001, No. 01-75; *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 776 A.2d 1068 (2001).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.