ABRAHAM SOLOMON *v.* CONNECTICUT MEDICAL
EXAMINING BOARD
(AC 24782)

Foti, Dranginis and Flynn, Js.

Argued September 9—officially released November 9, 2004

*Abraham Solomon,* pro se, the appellant (plaintiff).

*Patrick B. Kwanashie,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (defendant).

*Opinion*

DRANGINIS, J. The pro se plaintiff, Abraham Solomon, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the Connecticut medical examining board. On appeal, the plaintiff raises sixteen claims as to why it was improper for the court to affirm the defendant's decision to revoke his license to practice medicine in this state. The claims may be distilled into two categories: (1) the plaintiff was denied due process of law and (2) there was insubstantial evidence to support the defendant's decision. We disagree with the plaintiff's claims and, accordingly, affirm the judgment of the trial court.

The following facts are pertinent to our decision. On February 20, 2001, the department of public health (department) presented the defendant with a motion for summary suspension of the plaintiff's license to practice medicine in this state, pursuant to General

Statutes § 19a-17 (a) (7) (B)[1] and brought charges against him to revoke his license to practice medicine pursuant to General Statutes § 20-13c (4).[2] The defendant granted the motion to suspend the plaintiff's license, pending a final determination of the charges to revoke his license.

The department's charges against the plaintiff sounded in three counts.[3] Count one alleged that on November 27, 2000, the commissioner of health in New York had summarily suspended the plaintiff's license to practice medicine in that state on the basis of allegations that his medical conduct was negligent, grossly negligent, incompetent and fraudulent.[4] The department also asserted that the alleged facts constituted grounds for disciplinary action pursuant to § 19a-17 (a) (7) (B). Count two alleged that on various dates in 1999, the plaintiff was incompetent or negligent while attending to patients as an emergency department physician in

[1] General Statutes § 19a-17 (a) provides in relevant part: "Each board . . . may . . . (7) Summarily take any action specified in this subsection against a practitioner's license or permit upon receipt of proof that such practitioner has been . . . (B) Subject to disciplinary action similar to that specified in this subsection by a duly authorized professional agency of any state . . . . The applicable board . . . shall promptly notify the practitioner . . . that his license . . . has been summarily acted upon pursuant to this subsection and shall institute formal proceedings for revocation within ninety days after such notification."

[2] General Statutes § 20-13c provides in relevant part: "The board is authorized to restrict, suspend or revoke the license . . . to practice of a physician or take any other action in accordance with section 19a-17, for any of the following reasons . . . (4) illegal, incompetent or negligent conduct in the practice of medicine . . . ."

[3] The department later withdrew the third count.

[4] The New York board for professional medical conduct revoked the plaintiff's license to practice medicine in that state on June 1, 2001. The revocation was affirmed by the Appellate Division of the New York Supreme Court. *Solomon* v. *Administrative Review Board for Professional Medical Conduct*, 303 App. Div. 2d 788, 756 N.Y.S.2d 335 (2003). The Court of Appeals of New York denied the plaintiff's motion for leave to appeal. See *Solomon* v. *Administrative Review Board for Professional Medical Conduct*, 100 N.Y.2d 505, 793 N.E.2d 411, 762 N.Y.S.2d 874 (2003).

various hospitals in the state of New York. Furthermore, the department asserted that the alleged facts constituted grounds for disciplinary action pursuant to § 20-13c (4).

A three member panel of the defendant held a hearing on several dates in 2001, during which evidence, including expert testimony, was presented.[5] The panel submitted proposed findings of fact and a final decision to the defendant. The plaintiff represented himself at the hearing and before the board. The defendant reviewed the panel's proposed findings of fact, and the plaintiff exercised his right to challenge the factual findings in the panel's proposal. The defendant considered whether the plaintiff's practice of medicine poses a threat to the health and safety of any person, and rendered its decision on the basis of the record and its specialized professional knowledge. The defendant also took notice of the proceedings against the plaintiff in New York. See footnote 4.

The defendant found that the department had proved the allegations of the first count by a preponderance of the evidence and that the plaintiff was subject to disciplinary proceedings in this state. The defendant also found that the plaintiff's testimony was not credible, as his answers to questions posed at the hearing frequently were unresponsive, self-contradictory and evasive. His recollection was contradicted by a review of information in the charts of the patients under his care. With respect to the expert testimony, the defendant found that the department's expert was more credible than one of the plaintiff's experts. The second of the plaintiff's experts, the defendant found, was credible, but his testimony, in certain instances, substantiated the department's charges. The defendant found

---

[5] The members of the panel included a physician, an optometrist and a lawyer.

that the plaintiff was negligent and incompetent in his treatment of nine of the ten patients whose cases were presented to the board. The defendant found that the plaintiff did not practice medicine with reasonable skill and safety, and that his practice of medicine poses a threat to the health and safety of his patients. The defendant concluded, by a preponderance of the evidence, that the plaintiff's license was subject to disciplinary action pursuant to § 20-13c (4), and revoked his license to practice as a physician and surgeon in this state.

The plaintiff appealed pro se from the defendant's decision to the trial court pursuant to General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act (UAPA). The court upheld the defendant's suspension of the plaintiff's license to practice medicine pursuant to § 19a-17 (a) (7) (B) and the revocation of the plaintiff's license pursuant to § 20-13c (4). As he has on appeal to this court, the plaintiff claimed in the trial court that his right to due process was violated because one member of the panel slept during portions of the hearing, one or two members of the panel at a time were absent from portions of the hearing and only one member of the panel was a physician. Following a hearing on those claims, the court concluded that the plaintiff had not been denied due process of law, as the record disclosed that the hearing was conducted in accordance with the UAPA. The court found that the transcript revealed that the member of the panel whom the plaintiff accused of sleeping during testimony was not inattentive and asked questions during the proceedings. Although during the hearing, which was held on six nonconsecutive days, each member of the panel was absent once pursuant to an excused absence, each member of the panel attested that he either had heard the case or read the record in its entirety, which com-

plies with the provisions of General Statutes § 4-179.[6] The court cited General Statutes § 20-8a, which provides that the defendant consist of fifteen members appointed by the governor. Five members are to be physicians practicing in this state, five members shall practice in allied medical fields and five members shall come from the general public. Charges filed against a physician by the department are to be referred to a panel of the department consisting of three members, one of whom is a member of the defendant board and one of whom is a member of the public. The court concluded that the composition of the panel comported with the dictates of the statute.

The court also concluded that there was substantial evidence in the record to support the defendant's finding that the plaintiff was negligent and incompetent in the practice of medicine in nine out of the ten cases reviewed. The court noted that the defendant's findings turned on issues of credibility and recognized that it must defer to the defendant's assessment of credibility. In conclusion, the court sustained the defendant's decision and dismissed the appeal. The plaintiff appealed to this court.

We first address the applicable standard of review. We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the UAPA. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact

---

[6] General Statutes § 4-179 (a) provides in relevant part: "When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision."

and whether the conclusions drawn from those facts are reasonable. . . . [Constrained by a narrow scope of review] [n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The present appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered in accordance with the [UAPA]." (Citations omitted; internal quotation marks omitted.) *Towbin* v. *Board of Examiners of Psychologists*, 71 Conn. App. 153, 162–63, 801 A.2d 851, cert. denied, 262 Conn. 908, 810 A.2d 277 (2002).

I

The plaintiff has raised numerous issues, claiming that he was denied the constitutional right to due pro-

cess. More specifically, the plaintiff claims that the hearing to revoke his medical license failed to meet the minimum standards required by state and federal law, the panel was not comprised of experts in the field, the credentials of one of the panel members were misrepresented, the absences of panel members nullified the proceedings, the nonphysician members of the panel were not competent to give an opinion in this matter, the hearing was extended improperly beyond the 120 day deadline required by § 20-8a (g), the members of the panel were improperly excused on certain hearing dates, the board's vote was tainted because no member of the board had read the record, the trial court behaved in a prejudicial manner toward him, he was prejudiced by the change in trial courts,[7] the court's ruling was narrow and ignored certain facts and law, and it was improper for the court to take judicial notice of the decision of the New York Court of Appeals, as it was outside the record. We disagree with the plaintiff's claim that he was denied due process of law.

A

Before addressing the claims that properly are before this court, we take time to explain why we have not addressed many of the plaintiff's claims. In doing so, we are mindful of this court's policy toward pro se litigants. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation

---

[7] Judge Levine, the trial judge to whom the plaintiff's appeal originally was referred, recognized the optometrist as his own optometrist and recused himself. The Hon. Arnold W. Aronson, judge trial referee, conducted the hearing.

marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 80 Conn. App. 15, 19 n.2, 832 A.2d 679, cert. denied, 267 Conn. 904, 838 A.2d 210 (2003).[8] "This is because [a] party who, unskilled in such matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill advised and assumes a most difficult task. . . . Nonetheless, while the court exhibits some degree of leniency toward a pro se appellant, it cannot entirely disregard established principles of law." (Citation omitted; internal quotation marks omitted.) *State* v. *Kung*, 52 Conn. App. 121, 123 n.1, 726 A.2d 130 (1999).

A key rule of appellate practice in this state is that the appellant provide the reviewing court with an adequate record. Practice Book § 61-10. Many of the claims raised by the plaintiff in this court were not addressed by the defendant or by the trial court. In his brief, the plaintiff has omitted references to the return of record from which we might determine whether the issues were preserved for appeal. See Practice Book § 67-4 (c) and (d). If the plaintiff failed to raise issues before the panel or the defendant, he may not do so for the first time on appeal. "We need not review the merits of any claim, even a constitutional claim, that is presented for the first time on appeal. Practice Book § 60-5; *Lopiano* v. *Lopiano*, 247 Conn. 356, 372–73, 752 A.2d 1000 (1998)." *Hill* v. *State Employees Retirement Commission*, 83 Conn. App. 599, 615, 851 A.2d 320 (2004). Furthermore, if the trial court in its memorandum of decision failed to address a claim raised by the plaintiff, he could have filed a motion for articulation, which he has not done.

[8] We are reminded that the plaintiff represented himself before the panel, the defendant and in the trial court. The chairman of the panel informed the plaintiff of the seriousness of the charges and his right to have an attorney represent him. "We harbor no illusions that a [party's] decision to . . . proceed pro se generally will lead to anything other than disastrous consequences." *State* v. *Day*, 233 Conn. 813, 821, 661 A.2d 539 (1995).

See Practice Book § 66-5.[9] In short, the plaintiff did not preserve his claims for appeal and has failed to provide us with an adequate record.

## B

We now turn to the claims that were addressed by the court in its memorandum of decision. Those claims concern (1) the composition of the hearing panel, (2) the attentiveness of one of its members and (3) the members' absences from portions of the hearing.

The plaintiff claims that he was denied due process of law, in part, because the panel did not consist of physicians who were competent to hear the charges against him. The composition of a hearing panel is determined by § 20-8a (g), which provides in relevant part: "The [defendant] shall refer all statements of charges filed with the [defendant] by the department . . . to a medical hearing panel . . . . The panel shall consist of three members, at least one of whom shall be a member of the [defendant] and one a member of the public. The public member may be a member of either the [defendant] or of the list established pursuant to subsection (c) of this section. . . ."[10]

[9] In his brief, the plaintiff has cited federal law and statutes and articles from the popular press, which are inapplicable to the case at hand. Although the plaintiff's property right in his license to practice medicine is afforded constitutional protection, the procedural means by which that right is protected is governed by our General Statutes. See *Wasfi* v. *Dept. of Public Health*, 60 Conn. App. 775, 761 A.2d 257 (2000), cert. denied, 255 Conn. 932, 767 A.2d 106 (2001).

[10] General Statutes § 20-8a (c) provides in relevant part: "The Commissioner of Public Health shall establish a list of eighteen persons who may serve as members of medical hearing panels established pursuant to subsection (g) of this section. Persons appointed to the list shall serve as members of the medical hearing panels and provide the same services as members of the Connecticut Medical Examining Board. . . . The list shall consist of eighteen members appointed by the commissioner, eight of whom shall be physicians, as defined in section 20-13a, with at least one of such physicians being a graduate of a medical education program accredited by the American Osteopathic Association, one of whom shall be a physician assistant . . . and nine of whom shall be members of the public. . . ."

The substance of the plaintiff's claim is that only one of the members of the hearing panel was a physician and that the others, an optometrist and a lawyer, were not capable of deciding whether his practicing medicine poses a threat to the health and safety of any person. The plaintiff asserts that *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 560 A.2d 403 (1989), supports his contention. We do not agree that *Levinson* supports the plaintiff's contention. *Levinson* concerned the need for expert testimony when a hearing board was not comprised of a majority of expert witnesses. Id., 525. "As long as the board hearing and deciding a licensing matter is composed of at least a majority of experts in the field involved in the case, the board may rely on its own expertise in evaluating charges against persons licensed by the board and the requisite standard of care by which to judge such cases." Id.

In this case, the plaintiff and the department presented to the panel the expert testimony of physicians. The department's experts who testified against the plaintiff were board certified in emergency medicine.[11] The plaintiff did not challenge their qualifications. The panel rightfully may rely on the testimony of the experts who testify before it, and it need not be comprised of physicians. The panel did not rely solely on its expertise. We therefore conclude that the plaintiff's due process rights were not violated simply because the panel was not comprised of physicians.

The plaintiff claims that the physician member of the panel slept through portions of the proceedings. The court conducted a hearing on that issue on January 21 and 22, 2003, reviewed the transcript of the hearing before the panel and found that the physician member of the panel was not inattentive, as he periodically asked questions of the witnesses. The court found that the

---

[11] The plaintiff is not board certified in emergency medicine.

plaintiff had failed to substantiate his claim. This court will not reverse the factual findings of the trial court unless they are clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . ." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Bakery Place Ltd. Partnership,* 83 Conn. App. 343, 350, 849 A.2d 896 (2004). On the basis of our review of the return of record and the transcript of the hearing before the court, we conclude that the court's findings were not clearly erroneous.

The court also found, on the basis of its review of the record, that each member of the panel was absent for one day during the six day hearing. The defendant's chairman provided written, excused absences that were placed into evidence during the hearing.[12] Our review of the record confirms that finding. The UAPA contemplates that the members of hearing panels, who are not compensated; see General Statutes § 20-8a (c); from time to time may be unable to attend a portion of the hearing and may be excused. See *Pet* v. *Dept. of Health Services,* 228 Conn. 651, 673, 638 A.2d 6 (1994). Nonetheless, the absence of a panel member for a portion of the hearing is of no moment if the member attests that he or she has heard the case or read the record in its entirety. See General Statutes § 4-179. In this case, each member of the panel attested that he had heard or read the entire record.

Even if we were to agree, which we do not, that there were procedural irregularities with respect to the hearing conducted by the panel, the plaintiff has failed to demonstrate that he was harmed by them. Our Supreme Court has stated on a number of occasions that "not all procedural irregularities require a

---

[12] At the time the exhibits were placed into evidence, the plaintiff did not object or acquiesced to the absences, i.e., he said, "[N]o problem."

reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown." (Internal quotation marks omitted.) *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 97, 596 A.2d 374 (1991). The record contains overwhelming evidence, in the form of testimony and documents, that the plaintiff's practice of emergency medicine did not conform to the applicable standard of care. The court therefore properly concluded that the plaintiff was not denied due process of law.

## II

The plaintiff claims that the court improperly determined that there was substantial evidence in the record to support the defendant's decision to suspend and to revoke his license to practice medicine. On the basis of our review of the record, we cannot agree.

The first count of the department's statement of charges alleged, in part, that on November 27, 2000, the commissioner of health in New York issued a summary suspension of the plaintiff's New York medical license on the basis of allegations by the New York state department of health that the plaintiff's medical conduct was negligent, grossly negligent, incompetent and fraudulent. Furthermore, the department alleged that the aforementioned facts constitute grounds for disciplinary action pursuant to §§ 19a-17 (a) (7) (B) and 20-13c (4). In his answer to the statement of charges, the plaintiff admitted those allegations. "The admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Citation omitted; internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 541–42, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

Consequently, the court properly determined that there was substantial evidence by which the defendant could suspend the plaintiff's license to practice medicine and institute disciplinary proceedings against him.

The second count of the statement of charges alleged that the plaintiff was incompetent or negligent in the course of his duties as an emergency department physician at two hospitals in New York during 1999, and further alleged ways in which his medical conduct was negligent or incompetent. The defendant is "authorized to restrict, suspend or revoke the license or limit the right to practice of a physician . . . for any of the following reasons . . . (4) illegal, incompetent or negligent conduct in the practice of medicine . . . ." General Statutes § 20-13c.

The defendant found that the department had failed to sustain its burden of proof as to four of the specific allegations of the plaintiff's negligence and incompetence in the practice of medicine, including that he knowingly and intentionally made incorrect statements in a certain memorandum. It found, however, that the plaintiff failed to document adequately patient histories, perform adequate physical examinations, assess a patient's condition appropriately or order appropriate laboratory tests or secure appropriate consultations. It further found that the plaintiff had administered contraindicated medications to patients. The defendant also found that the plaintiff did not practice medicine with reasonable skill and safety, and that his practice of medicine poses a threat to the health and safety of any person. The defendant concluded that there was a basis on which to subject the plaintiff's license to disciplinary action pursuant to § 20-13c (4).

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support

the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable . . . . The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 667–68. The court reasoned that the defendant's determinations were matters of credibility, particularly with respect to the experts who testified before the panel and the plaintiff.[13] It is not the function of the trial court or this court to assess the credibility of witnesses, as that is the province of the trier of fact. See *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 312, 838 A.2d 135 (2004). The court therefore properly concluded that there was substantial evidence in the record to support the defendant's decision.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] In oral argument before this court, the plaintiff contended that one of the department's experts was not qualified to testify. At the hearing, however, the plaintiff did not object to the expert's testifying. The plaintiff thereby waived his right to challenge the expert's credentials, although he could have cross-examined him to challenge the expert's opinions.

[14] On appeal, the plaintiff has raised a claim pursuant to *Daubert* v. *Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The claim does not appear to have been raised during the hearing or before the defendant and is not mentioned in the court's memorandum of decision. We therefore decline to afford it review. See *Haggerty* v. *Williams*, 84 Conn. App. 675, 688, 855 A.2d 264 (2004) (issue must be raised at trial and appellant must furnish adequate record).