## TOWN OF MONTVILLE *v.* LEO ANTONINO ET AL.
### (AC 23056)

Lavery, C. J., and West and DiPentima, Js.

Argued May 28—officially released July 8, 2003

*Ronald F. Ochsner*, for the appellant (plaintiff).

*Dana M. Horton*, for the appellees (named defendant et al.).

*Opinion*

WEST, J. In this eminent domain action, initiated pursuant to General Statutes § 7-247, the plaintiff, the town of Montville (town), appeals from the judgment rendered following a trial to the court. On appeal to this court, the town claims that the trial court improperly (1) denied its motion to correct and alter the court's memorandum of decision, and (2) determined the damages sustained by the defendant owners (owners).[1] Although we conclude that the memorandum of decision contained minor factual, typographical and proofreading errors, the court's decision was not clearly erroneous. We therefore affirm the judgment of the trial court.

The following facts are not in dispute. The town initiated this action by and through its water pollution control authority to acquire a portion of the owners' real property, where additional waste water treatment facilities were to be constructed. At the time, November,

---

[1] The defendants in the trial court were Leo Antonino, Girard Antonino, John Antonino, Lawall Realty, LP, and Citizens Bank of Connecticut. Lawall Realty, LP, is not a party to this appeal.

2000, the owners' property consisted of approximately thirty-one acres of land adjacent to the existing waste water treatment plant just off Route 32 in the town. Pursuant to the condemnation, the town took six distinct parcels of the owners' land totaling six acres. In addition to acquiring a fee simple interest in the owners' property, the town also obtained slope easements and a permanent right of way over the land of the defendants. On November 7, 2000, the town filed a statement of compensation and deposited $100,000 with the clerk of the Superior Court for the judicial district of New London. The owners filed an appeal and application for review of the statement of compensation.

The court held a hearing on the owners' appeal at which time it heard testimony from three real estate appraisers, two testifying for the town and one testifying for the owners. The court also viewed the subject real property. The court found the testimony of the owners' appraiser to be more accurate and appropriate, and that his comparisons appeared to be closer to the actual demographics of the land in question. The court awarded the owners $452,000 in damages as a result of the loss they sustained due to the taking. The town subsequently filed a motion to correct the court's memorandum of decision, which the court denied. The town appealed to this court.

Our Supreme Court has stated the scope of appellate review and the purpose of condemnation proceedings. See *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 767 A.2d 1169 (2001). "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings are clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and

logically correct and find support in the facts that appear in the record. . . .

"Article first, § 11, of the Connecticut constitution provides that [t]he property of no person shall be taken for public use, without just compensation therefor. This court has stated consistently that [t]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he [or she] would have been in had the property not been taken. . . .

"The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. . . . The fair market value is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use. . . . The highest and best use of a given parcel contemplates the use which will most likely produce the highest market value, greatest financial return, or the most profit . . . . In determining its highest and best use the [trier of fact] must consider whether there was a reasonable probability that in the reasonably near future the subject property would be put to that use, and the effect, if any, that such a prospective use may have on market value at the time of the taking. . . . [Q]uestions of highest and best use and reasonable probability of future changes affecting value are factual determinations for trier . . . .

"In an eminent domain proceeding, a trial court may seek aid in the testimony of experts, but must ultimately make its own independent determination of fair compensation . . . on the basis of all the circumstances bearing upon value. . . . Our cases have reaffirmed

the principle that, because each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property." (Citations omitted; internal quotation marks omitted.) Id., 539–41.

I

The town's first claim is that the court improperly denied its motion to correct or alter the memorandum of decision to correct the factual and editorial errors it contained. Although the court's memorandum of decision contains minor factual and editorial mistakes, none of the errors, as the town concedes in its brief, is relevant to the court's judgment.

The town has pointed out three typographical errors in the court's memorandum of decision. Inasmuch as the errors were committed by a typist and overlooked by a proofreader, they are recognized by the reader as errors of that nature. "It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake. . . . If a memorandum incorrectly formalizes the decision that was reached in deliberation, it should be corrected." (Internal quotation marks omitted.) *Jetmore* v. *Jetmore*, 6 Conn. App. 632, 635, 507 A.2d 116 (1986). The mistakes in the court's memorandum do not go to the formalization of the court's decision, unlike the mistake in *Jetmore*, a marital dissolution action in which the court stated that the marital home was owned jointly by the parties but, in fact, was held in the name of the plaintiff only. The editorial mistakes at issue here do not go to the substance of the court's decision, and the court did not improperly deny the town's motion to correct on those bases.

In addition to the editorial errors contained in the memorandum of decision, the town also has pointed out five additional misstatements of the court with respect to the testimony presented at the hearing. Although the town claims that these errors are more serious than the editorial mistakes previously addressed, it concedes that in and of themselves, they are relatively minor. To resolve the town's more serious claims, we have reviewed the transcript of the hearing before the court. We will address each of the town's assertions of error.

The first factual error noted by the town is the court's statement that the "plaintiff retained F. Jerome Silverstein" as its expert real estate appraiser. In a manner of speaking, the court misspoke. The error is one that commonly occurs in the trial court when the court, and sometimes the parties,[2] confuses the positions of the parties. As the case caption is styled, the town is the plaintiff because it initiated the condemnation proceeding. The owners are defendants, but the owners took the appeal and had the burden going forward at the hearing. The owners, therefore, presented evidence first. Although the statement is technically inaccurate, the inaccuracy has no bearing on the court's ultimate conclusion.

The town also has pointed out inaccuracies in the court's recitation of facts related to a comparable sale noted by the owners' appraiser. The court wrote "a sale of 10.1 acres with a value of $44,000 per acre." This statement contains another typographical error in that the average value per acre contained in the appraiser's report is $44,600. The parcel of land in question con-

[2] As a matter of fact, counsel for both parties made that common mistake at the hearing when each side rested. When the owners rested, counsel stated, "Plaintiff rests." When the town rested, counsel stated, "The defense has nothing further, Your Honor." The court cannot be faulted for having made a common slip of the tongue.

tained 10.1 acres of land of which only 7.5 acres was usable. The appraiser noted the average price per acre for the total parcel and the average price per acre of useable land. In reading the appraiser's report, we can see how one's eye could skip a line and cause the mistake made. The error, however, is not consequential. Although we urge trial courts to read and to quote from exhibits with care, and to proofread memoranda of decision punctiliously to avoid the type of mistake that occurred here, the misstatement at issue, again, does not go to the essence of the court's ultimate decision as to the value of the loss sustained by the owners.

The town also claims that the court improperly stated that in the opinion of one of the town's expert appraisers, Robert H. Silverstein, the value of the taking was $72,000, rather than $100,000 as stated in Robert Silverstein's written report. We note that the court is the arbiter of facts. During the hearing, Robert Silverstein testified that the value of the taking was $72,000, that sum being the difference between the pretaking value of the real estate and the posttaking value of the land. Robert Silverstein also testified that at a later time, he determined the value of the taking to be $100,000. We, therefore, cannot conclude that the court misstated Robert Silverstein's value of the taking. Whether his appraisal of the taking was $72,000 or $100,000, it did not tip the scales with respect to the court's decision.

The town's fourth claim concerns yet another misstatement of the court that fails to go to the crux of its decision. The court's memorandum of decision states that one of the town's testifying expert witnesses was Robert J. Flanagan. Robert J. Flanagan participated in the preparation of the town's appraisal, but Stephen Flanagan testified at the hearing.

The last of the town's claims of incorrect statements made by the court is that Stephen Flanagan did not

comment on the effect of the property's proximity to the waste water treatment plant. In fact, Stephen Flanagan did testify that the waste water treatment plant was a negative factor with respect to the value of the property, and his written appraisal contains that opinion as well. Again, although the court's memorandum of decision contains factual inaccuracies with respect to the evidence, those inaccuracies do not rise to the level of reversible error.

Although we agree with the town that it would have been "good housekeeping" for the court to have granted the town's motion to correct the misstatements and editorial errors in its memorandum of decision, we cannot conclude that the court's judgment should be reversed on the basis of the mistakes drawn to our attention by the town.

## II

The town's second claim is that the court improperly determined the amount of damages sustained by the owners due to the taking of their real property. More specifically, the town claims that the court improperly relied on the appraisal of the owners' real estate appraiser because the appraisal was excessive and speculative, and that the court's reliance on that appraisal was clearly erroneous. We disagree.

"This is an issue of valuation. Valuation is a matter of fact to be determined by the trier's independent judgment. See *Bridge Street Associates* v. *Water Pollution Control Authority*, 15 Conn. App. 140, 147, 543 A.2d 1351 (1988). Because this is a challenge to the court's finding of facts, we apply a clearly erroneous standard of review. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed. . . . *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 70, 699 A.2d 101 (1997). It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony. *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002)." (Internal quotation marks omitted.) *New London* v. *Picinich*, 76 Conn. App. 678, 685, 821 A.2d 782 (2003).

F. Jerome Silverstein, a real estate appraiser, testified on behalf of the owners. In reaching his opinion as to the value of the town's taking of the owners' real property, he used the comparative sales method of analysis. He cited four properties he considered comparable to the owners' land. On appeal, the town claims that the four other parcels of land are not comparable to the land in question and that the appraisal therefore lacks credibility.

The town first attacks the access characteristic of the five parcels of land. According to F. Jerome Silverstein, access to the owners' property is good. The town claims that the other four properties are within a very short distance from the interstate highway system because they are accessible from the interstate highway over a short stretch of state highway. With respect to the four comparable properties, the town describes accessibility with adjectives such as short or very short. With respect to the accessibility of the owners' property to the interstate highway system, the town describes the distance in feet. It claims that the owners' land is more than 3500 feet from the interstate highway system and can be reached by traveling 2000 feet over each of two state highways. This court takes judicial notice that there are 5280 feet in one mile. In concluding that the five properties were comparable, the trial court obviously found no difference between a very short distance, a short distance and less than one mile. We do not con-

clude that the court's finding of the properties to be comparable to be clearly erroneous.

The town also takes exception to F. Jerome Silverstein's conclusion that the best use of the property would be a retail and office center. The town's real estate appraisers concluded that the best use of the land was for commercial development, according to Robert Silverstein, or secondary commercial or industrial use, according to Stephen Flanagan. Robert Silverstein opined that the subject land was in the town's main retail area. The town has failed to make clear to this court how F. Jerome Silverstein's opinion is inconsistent with the opinions of its own appraisers.

F. Jerome Silverstein also opined that the fact that the owners' property was adjacent to the waste water treatment plant was not a negative factor. Both Robert Silverstein and Stephen Flanagan testified to the contrary. They also opined that the presence of an old cemetery on the property was a negative, as did F. Jerome Silverstein. The town therefore claims that F. Jerome Silverstein's testimony is not credible. In its report, the court noted the differences in the opinions of the various appraisers. Courts of appeal do not pass on the credibility of witnesses. Credibility is a matter for the trier of fact to determine and, on the basis of the record before us, we cannot say that the court's conclusion was clearly erroneous.

In its conclusion, the court noted that all three appraisers considered the same factors as to the area, zoning, location and demographics. The primary difference in their analyses was the value of the owners' real property prior to the taking and the market value of it after the taking. The court found that the difference in the valuations of the three appraisers varied by as much as 25 percent. The court concluded that the values expressed by F. Jerome Silverstein were more accurate

and appropriate because his comparisons were closer to the actual demographics of the land in question. On the basis of our review of the evidence and the transcript of the hearing, we do not conclude that the court's finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.