# CITY OF NEW HAVEN *v.* NORMAN TUCHMANN
## (AC 26088)

Schaller, Gruendel and Harper, Js.

Argued December 2, 2005—officially released February 21, 2006

*Benson A. Snaider*, for the appellant (defendant).

*Michael A. Wolak III*, assistant corporation counsel, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Norman Tuchmann, appeals from the judgment of the trial court increasing the amount of compensation payable to him in connection with the condemnation of certain of his real property by the plaintiff city of New Haven. On appeal, the defendant claims that the court improperly (1) denied his motion for a mistrial and (2) considered certain evidence in determining the fair market value of the property.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The subject property, owned by the defendant, is at 56 River Street in New Haven. The plaintiff sought to acquire the property as part of the River Street municipal development plan. On April 3, 2003, the plaintiff filed an application for immediate entry and an order to show cause. The plaintiff sought to enter the defendant's property to conduct a phase II environmental site assessment[2] to aid in determining the fair market value of the property. Contemporaneously with the filing of the application, the plaintiff also filed a notice of intention to commence condemnation proceedings in the exercise of its power of eminent domain, pursuant to General Statutes §§ 8-193 and 8-129.

---

[1] At oral argument, the defendant abandoned his additional claim that the court improperly calculated the interest due to him.

[2] Because the defendant did not grant the plaintiff permission to enter the property, a phase I environmental site assessment had been conducted without entering the property on September 1, 2001. The assessment indicated the possibility of environmental contamination.

On July 11, 2003, the plaintiff filed a notice of condemnation and a statement of compensation. The plaintiff represented that it had obtained an appraisal of the property that estimated its fair market value at $175,000, absent any environmental problems and associated remediation costs. Because of possible environmental contamination, however, the plaintiff determined that compensation of $87,500 was merited, and deposited that amount with the clerk of the court. The certificate of taking was filed with the court on August 4, 2003, and with the city clerk on August 11, 2003. The $87,500 was disbursed to the defendant on September 8, 2003. On October 8, 2004, after a phase II environmental site assessment had been conducted, the plaintiff filed an amended statement of compensation. The plaintiff increased the compensation awarded to the defendant by an additional $87,500, which was deposited with the clerk of the court and disbursed to the defendant on October 13, 2004.

On July 18, 2003, the defendant filed an appeal and application for review of the statement of compensation pursuant to General Statutes § 8-132. The appeal was tried to the court on October 13, 2004, and included testimony by several real estate appraisers.[3] In a memorandum of decision filed November 22, 2004, the court determined that the fair market value as of the date of taking, August 11, 2002, was $210,000, thus awarding the defendant an additional $35,000.[4] This appeal followed.

I

The defendant first claims that the court improperly denied his motion for a mistrial. Specifically, he argues

---

[3] On October 21, 2004, the court visited and inspected the property in the presence of counsel for both parties.

[4] The court also awarded the defendant 6 percent interest on the amount of $87,500 from the date of the taking, August 11, 2003, to the date of the plaintiff's second payment, October 8, 2004, and 6 percent interest on the amount of $35,000 from the date of the taking to the date of payment.

that statements by the court draw into question its impartiality. We do not agree.

The following additional facts are pertinent to the defendant's claim. The defendant was seated at counsel table throughout the course of trial. During testimony by a witness, the defendant closed his eyes. The court then cautioned that if the defendant was asleep, he would be escorted from the courtroom.[5] A brief recess was then taken. Later in the trial, the defendant moved for a mistrial on the basis of the court's comment during a recess that the defendant's "attitude and presence in the court, if it continues in the same state, would work against him . . . ." Specifically, counsel argued that the court's comment created the impression that the defendant's unintentional conduct may have turned the court against him.[6] The court denied the defendant's motion. He now argues that bias was, in fact, evidenced

___

[5] The colloquy between the court and the defendant's counsel was as follows:

"The Court: Okay. Mr. Snaider, if [the defendant] is going to fall asleep, please—

"[The Defendant's Counsel]: I'm sorry?

"The Court: If [the defendant] is asleep, please have him escorted from the courtroom. We'll stand in recess."

[6] The defendant's oral motion was as follows: "Your Honor, if I may, I would respectfully request a mistrial. I feel that Your Honor, although I have—I think Your Honor has taken on a feeling that perhaps my client is disrespectful to the court, but that's the furthest thing from truth. But Your Honor's comment that his attitude and presence in the court, if it continues in the same state, would work against him, I think gives me the impression that perhaps my client has unintentionally crossed the line. He is a man of almost eighty years. He just came back from Arizona or Nevada where he was in the desert. His eyes are hurting, and it may cause some conduct that Your Honor noted twice, that I clearly did not notice because I'm looking the other direction, but I would respectfully ask for a mistrial because I feel that this is a very important case with regard to everyone concerned, for the city and, especially, for my client, and I feel that there should not be any shadow of doubt cast over these proceedings, and whatever the judgment is of the court, I think it should be unclouded by any concern that his presence in the court might have—might have turned Your Honor one way or the other. So, with respect, I ask for a mistrial."

by the court's finding of a fair market value lower than that established by the appraisals of the defendant's experts.

"The standard by which we review a court's ruling on . . . a motion for a mistrial is abuse of discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Wallenta* v. *Moscowitz*, 81 Conn. App. 213, 226–27, 839 A.2d 641, cert. denied, 268 Conn. 909, 845 A.2d 414 (2004).

The standard of conduct to which we hold judges is well recognized. "Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *Joyner* v. *Commissioner of Correction*, 55 Conn. App. 602, 608, 740 A.2d 424 (1999), rev'd on other grounds, 255 Conn. 477, 774 A.2d 927 (2001).[7] "Not every

---

[7] The standard is derived from canon 3 (c) (1) of the Code of Judicial Conduct, which provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

departure from the norm, however, is reversible error. Prejudice to the unsuccessful party, or at least the possibility of it, must appear to have occurred before this court will be justified in depriving the successful party of the result of the litigation which, so far as it was affected by his actions, he has obtained by fair means." (Internal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 11, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989).

We first look to the court's statement that if the defendant was asleep, he would be escorted from the courtroom. "The trial court is responsible for maintaining a calm demeanor and the decorum of the courtroom." Id., 11. Certainly, the presence in the courtroom of persons—let alone parties—asleep during court proceedings affects the demeanor and decorum of the proceedings. Accordingly, the court acted within its discretion to caution an apparently sleeping party so as to maintain the decorum of the courtroom.

We next determine whether the court's statement, made during a recess, that the defendant's demeanor may "work against him" indicated a bias against the defendant on the part of the court. In *Joyner*, this court noted that it has been rare for our Supreme Court to conclude that a judge should have been recused[8] from a case on the basis of conduct indicating bias against a party. *Joyner* v. *Commissioner of Correction*, supra, 55 Conn. App. 610. In those few cases, however, the alleged misconduct by the court was more egregious than that demonstrated in the current case.[9] We further

---

[8] The defendant, in the alternative, could have preserved his claim by making a motion to have the judge recused from the case. See *Lo Sacco* v. *Young*, supra, 20 Conn. App. 9. Because the motion for a mistrial is based on the same grounds as the motion for disqualification, we use the same reasoning in our analysis.

[9] Cf. *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 817, 717 A.2d 1232 (1998) (judge visited disputed property on his own, conversed with property owner), on appeal after remand, 257 Conn. 570, 778 A.2d 885 (2001); *Cameron* v. *Cameron*, 187 Conn. 163, 168–71, 444 A.2d 915 (1982) (judge

noted in *Joyner* that "[i]n a myriad of other cases, the denial of a motion to recuse was upheld because the judge's impartiality was not sufficiently compromised." Id., 610.[10] "A judge . . . is a human being, and not the type of unfeeling robot some would expect the judge to be. . . . [A] display of exasperation . . . falls far short of a reasonable cause for disqualification for bias or prejudice under [canon 3 (c) (1)] of the Code of Judicial Conduct." (Internal quotation marks omitted.) *Barca* v. *Barca*, 15 Conn. App. 604, 614, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). Here, we are persuaded that the court's comments were indicative of exasperation with a defendant whom the court believed was sleeping during the presentation of evidence. The court's comments, although perhaps not made wisely, were not the equivalent of the court's conduct in those cases in which we have concluded that the impartiality of the court was compromised.

Moreover, the defendant has failed to show prejudice from the court's comments. The court increased the

accused defendant, counsel of perpetuating fraud on court, stated counsel had previous trouble with clients absconding, made comments on counsel's reputation for prior unprofessional conduct before court); *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 740–54, 444 A.2d 196 (1982) (judge made comments to news reporter as to propriety of illegal teacher strikes that were subject of case).

[10] Cf. *Levesque Builders, Inc.* v. *Hoerle*, 49 Conn. App. 751, 762–63, 717 A.2d 252 (1998) (court's request that defendant's counsel stop staring at her); *Lo Sacco* v. *Young*, supra, 20 Conn. App. 8–13 (admonishment of pro se litigant in front of jury); *Barca* v. *Barca*, 15 Conn. App. 604, 610–11, 546 A.2d 887 (comments by court that wages in question were " 'graft,' " that in her judgment defendant had lied and during cross-examination by defendant that " 'there is something smelling in Denmark' "), cert. denied, 209 Conn. 824, 552 A.2d 430 (1988); *State* v. *Boone*, 15 Conn. App. 34, 48–51, 544 A.2d 217 (laughter from bench on four occasions during cross-examination by defendant, questioning of state's witness from bench, allowing prosecutor to ask leading questions on direct examination), cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988); *Keppel* v. *BaRoss Builders, Inc.*, 7 Conn. App. 435, 439–45, 509 A.2d 51 (court's comment that defendant playing fast, loose with his attorney, court), cert. denied, 201 Conn. 803, 513 A.2d 698 (1986).

valuation of the subject property, awarding the defendant an additional $35,000 plus interest. In light of our holding on the defendant's second claim, which is that the court did not abuse its discretion in arriving at the valuation, we cannot conclude that the defendant was prejudiced by the court's comments. Accordingly, under the circumstances, the court did not abuse its discretion in denying the defendant's motion for mistrial.

## II

The defendant next claims that the court improperly considered certain evidence in determining the fair market value of the property. Specifically, the defendant argues that the court improperly considered opinion evidence, contained within one of the appraisals by the plaintiff's expert, of the load bearing capacity of the soil when that witness had not been qualified as an expert in load bearing capabilities. We agree, but find the error harmless.

The following additional facts are relevant to the defendant's claim. During the trial, the court heard testimony on the issue of value from three expert appraisal witnesses, all of whom used the direct sales comparison approach.[11] The defendant first presented testimony from John Lo Monte, who determined the value of the subject property on the date of taking to be $430,000. The defendant also presented testimony from Charles Wisnioski, who previously had prepared an appraisal report on behalf of the city. He determined that the updated value of the subject property as of the date of the taking was $282,000. The plaintiff presented testimony from Arthur B. Estrada, who determined that the value of the property at the time of the taking was $175,000. During direct examination of Estrada, the plaintiff asked the witness about the load bearing capa-

---

[11] The court also heard testimony from two witnesses with expertise on environmental matters.

bilities of soil along River Street. The defendant objected on the ground that the witness was an appraiser, not a geologist, and the court sustained the objection. Later, when asked about adjustments to his valuation during cross-examination, Estrada referred to the load bearing capacities of the subject property. The defendant asked that the portion of the response concerning the load bearing capacities be stricken and not considered by the court, which the court granted. After making numerous findings about the condition of the subject property and the credibility of the expert testimony, the court valued the property as of the date of taking at $210,000.

The defendant challenges the court's valuation of the subject property. "Valuation is a matter of fact to be determined by the trier's independent judgment. . . . Because this is a challenge to the court's finding of facts, we apply the clearly erroneous standard of review. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Bakery Place Ltd. Partnership*, 83 Conn. App. 343, 350, 849 A.2d 896 (2004). "Where, however, some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 82 Conn. App. 41, 48, 844 A.2d 855 (2004), rev'd in part on other grounds, 276 Conn. 377, 886 A.2d 391 (2005).

We begin by examining whether it was proper for the court to make a finding on the load bearing capabilities of the soil[12] when similar testimony offered at trial was stricken as inappropriate because Estrada was not qualified as an expert in geology. "[A]nswers that are stricken are to be disregarded by the [trier of fact] and are also not considered as evidence." *State* v. *Aldrich*, 53 Conn. App. 627, 632, 733 A.2d 237, cert. denied, 250 Conn. 909, 734 A.2d 989 (1999); see also Practice Book § 5-6 ("[w]henever evidence offered upon trial is objected to as inadmissible, the judicial authority or committee trying such case shall not admit such evidence subject to the objection"). A review of the transcript indicates that no expert, other than Estrada, testified about the load bearing capabilities of the soil.[13] The court's finding on the load bearing capabilities of the soil, therefore, was not supported by the evidence.

Moreover, as neither party properly introduced evidence on the load bearing capabilities of the soil, that fact was not at issue. "It is well settled that [a] judgment cannot be founded on a finding of facts not in issue . . . ." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 783, 804 A.2d 889 (2002). The court sustained the defendant's objections to the plaintiff's introduction of such evidence and struck the testimony. The defendant, therefore, had no opportunity to cross-examine Estrada on his opinion or to introduce contradictory evidence of the nature of the soil to undermine the credibility of the claim. Accordingly, the court's reliance on its finding of fact that the load

[12] Specifically, in its memorandum of decision, the court noted: "The parcel is located in a flood zone. '[O]ther land in the general area has limited load bearing capabilities; as such, construction on this parcel would probably require pilings or other procedures to stabilize the soil.' " (Citation omitted.)

[13] Lo Monte was questioned about his familiarity with the concept of load bearing capabilities, but did not offer any testimony as to the load bearing capabilities of the subject property.

bearing capabilities of the soil were compromised was improper.

We must now examine the court's factual finding on the valuation of the property as a whole to determine whether the error was harmless. "Our cases have reaffirmed the principle that, because each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property." (Internal quotation marks omitted.) *Montville* v. *Antonino*, 77 Conn. App. 862, 865–66, 825 A.2d 230 (2003). "In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." (Internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 799–800, 769 A.2d 725 (2001).

We look to whether the record, aside from the improperly considered evidence, supports the court's determination of value. "In determining the value of a condemned property, [t]he general rule . . . is that the proper measure of damages is . . . the market value of the property as improved, in view of all the uses to which it is adaptable and available." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Bakery Place Ltd. Partnership*, supra, 83 Conn. App. 350.[14] Here, the record reveals that the court considered

---

[14] All three appraisers generally agreed as to the highest and best use of the property and used the direct sales comparison approach to value.

many factors, including location,[15] accessibility[16] and environmental conditions[17] in determining the fair market value of the property. Accordingly, the record supports the court's valuation of the property, notwithstanding the court's improper mention of the excluded evidence concerning the load bearing capabilities of the soil.

In assessing the evidence to determine the fair market value of the subject property, the court evaluated the credibility of the expert testimony. "It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Internal quotation marks omitted.) *Montville* v. *Antonino*, supra, 77 Conn. App. 870. Here, the court explicitly rejected the $430,000 valuation offered by the defendant's expert appraiser, Lo Monte, because the differences in the properties relied on for comparable sales were so great as to render his determination of value, even when adjusted for differences, of little value to the court. The court also determined, however, that the comparable sales and ultimate opinion offered by the plaintiff's expert appraiser, Estrada, were not seriously impugned on cross-examination.

---

[15] Specifically, the court found that the property is located in a very old neighborhood, where some of the buildings are dilapidated and there is a very large scrap metal yard nearby.

[16] The court found that overall access to the property has been somewhat reduced by the long-term closing of an area bridge. Moreover, although the property has waterfront access, which is not an aesthetic benefit, the site may be accessed only by barge because of the shallow depth of that water. Similarly, the property's proximity to the Quinnipiac River does not substantially enhance its fair market value.

[17] The court noted that the property is environmentally contaminated with petroleum byproduct, arsenic and lead, which might exert some downward pressure on value when compared to noncontaminated properties. Because there is no regulatory requirement that the contamination be remediated in connection with construction on the property, as long as the soil is kept on site and the property is blacktopped beyond any building constructed on the property, the court found that the contamination did not dramatically affect its fair market value.

Ultimately, the court's valuation of the property at $210,000 fell between the two values, $175,000 and $282,000, offered by experts the court deemed credible. Although we agree that the court should not have considered the excluded testimony in determining the property's value, in light of the evidence before the court and its determinations on the credibility of that evidence, we find that the error was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.

