******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BRIAN W.
CORRINGHAM
(AC 36684)
(AC 36685)
(AC 36686)

Lavine, Keller and Flynn, Js.

*Argued January 12—officially released March 17, 2015*

(Appeal from Superior Court, judicial district of New
London, geographical area number twenty-one,
Moukawsher, J.)

*Conrad Ost Seifert*, assigned counsel, for the appel-
lant (defendant).

*Maria del Pilar Gonzalez*, special deputy assistant
state's attorney, with whom, on the brief, were *Michael
L. Regan*, state's attorney, and *Marissa Goldberg*, dep-

uty assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Brian W. Corringham, brings this consolidated appeal from the judgments of the trial court finding him in violation of probation pursuant to General Statutes § 53a-32. The defendant claims that the court's finding that he violated his probation was not supported by the evidence. We affirm the judgments of the trial court.

The following procedural history underlies this appeal. In 2008, the defendant was convicted under docket number K21N-CR-06-0132614 of risk of injury to a child, and was sentenced to a five year term of incarceration, execution suspended, and a three year term of probation. In 2009, the defendant was convicted under docket number K21N-CR-09-0140028 of violating the conditions of his release in the first degree, and was sentenced to a three year term of incarceration, execution suspended after six months, followed by a three year term of probation. In 2013, the defendant was convicted under docket number K21N-CR-10-0126054 of sexual assault in the fourth degree and risk of injury to a child, and was sentenced to an eight year term of incarceration, execution suspended, followed by a three year term of probation. Among the customary conditions of probation in all three matters was the condition that the defendant not violate any criminal law of this state. Among the conditions of probation under docket number K21N-CR-10-0126054 was the condition that the defendant undergo sex offender evaluation and treatment.

In 2013, while the defendant was serving a period of probation under all three of the docket numbers set forth in the preceding paragraph, he was charged under docket number K21N-CR-13-0121382 with sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). In connection with the alleged criminal conduct underlying that charge, which allegedly occurred on May 10, 2013, the defendant was charged under § 53a-32 with violating his probation in all three cases under which he was serving probation. The state's theory of the case was that the defendant, while residing at a residential sex offender treatment center, touched an intimate part of a fellow resident, D.S.,[1] for sexual gratification. The court held a hearing related to the charges in all four cases on March 5 and 6, 2014. On March 7, 2014, the court orally delivered its decision. The court found the defendant not guilty of sexual assault in the fourth degree. The court, however, found that the defendant violated his probation in each of the three violation of probation cases, and in each of these cases imposed a sentence of fifteen months of incarceration, to run concurrently with the sentence imposed in the other two cases. The court ordered that probation continue in accordance with any terms and conditions that had been imposed previously.

In its ruling, the court stated in relevant part: "So, I've heard oral arguments and all the evidence on, both, the three violations of probation and the sexual assault in the fourth degree, and I'm prepared to make my ruling. . . .

"I've considered the testimony and the arguments carefully, and what I say next is going to apply, both, to the criminal cases and the cases for violation of probation.

"First, I hold that for me to find [the defendant] in violation of his probation, the state must prove by a preponderance of the evidence that [the defendant] committed the underlying offense. In other words, that he violated his condition of his probation that he obey the law. Or, in the matter ending [in] 6054, that he failed to attend and cooperate with counseling and sex offender treatment.

"For me to find [the defendant] guilty of sexual assault in the fourth degree, the state must prove that he committed this offense beyond a reasonable doubt. To prove the underlying offense of sexual assault in the fourth degree, § 53a-73a requires the state to prove that [the defendant] intentionally subjected another person [to] sexual contact for the purpose of sexual gratification without the person's consent. Under § 53a-65, sexual contact includes contact with the intimate parts of a person for the purpose of sexual gratification; the intimate parts include the buttocks. Sexual contact also includes contact through clothing. Consent is judged based on whether a reasonable person, under all of the circumstances, would believe that the complainant affirmatively consented to the contact. Affirmative consent can be by words or by actions. . . .

\* \* \*

"It was a condition of all three probations that he not violate the law. He signed a document agreeing to these conditions in all three cases.

"[The defendant] and D.S., the complainant, were both adults. They were both convicted sex offenders. At the time of the incident on May 10, 2013, they were residents of the January Center, a facility for the housing and treatment of convicted sex offenders. As of May 10, [the defendant] and D.S. knew each other since about the time of [the defendant's] arrival at the January Center on April 23, a period of about two weeks and a couple days. They had a friendly relationship.

"[The defendant] was complying with the January Center rules; D.S. was not. [The defendant] had touched D.S. and D.S. had touched [the defendant], including once on the morning of May 10, 2013, when D.S. put his hands on [the defendant's] shoulder. All of the touching was confined to the shoulders, hands and arms. None of the touching was done in a private place, or

a bathroom, or a bedroom . . . or a common room for watching television or an exercise area. Prior to the incident at issue, none of the touching was sexual. Both [the defendant] and D.S. agreed on that point.

"Prior to the incident that led to [the defendant's] arrest, D.S. neither complained to the staff nor asked [the defendant] to stop engaging in any form of touching. On May 10, 2013, in the January Center bathroom, [the defendant] touched D.S. on the buttocks. D.S. said that it was a grab; [the defendant] said it was a pat, but it doesn't matter here either way because I find that the contact was for sexual gratification. [The defendant] said so. [The defendant] made it clear that what he was attempting to do was to suggest a romantic relationship to D.S. and this was his attempt to do that. It was not a playful pat that would take place in a sporting environment or any other type of thing. I find it was for sexual gratification.

"After the contact, D.S. told [the defendant] something to indicate that the contact was unwelcome, such as, don't touch me, or words to that affect. I realize there's some dispute over the exact wording of what was said, but the wording that matters to me was, it was an indication of not to do that again. [The defendant] did not touch him again.

"I conclude that [the defendant] violated his three probations because it's more likely than not, in my view, that [the defendant] touched D.S. without his consent and, in the 6054 matter, that he therefore did not cooperate with the terms and conditions of his treatment and counseling.

"Conduct signaling consent can be a subtle thing. But, both agree that the earlier touching was not sexual. Given that the touching took place in the common areas of the facility and based upon the body parts that were touched, I do not find that these contacts, on balance, to be sufficient affirmative invitation to touch an intimate body part. I paid particular attention to the demeanor in my view, the [credibility] of [the defendant] and D.S. in judging this matter. [The defendant] strikes me as a man who knows he went too far, or thinks it was okay to try. D.S., on balance, appeared to have no feeling for [the defendant] and that it is reasonably credible given that there was a great gap in age between the two of them.[2]

"I find [the defendant] not guilty of sexual assault in the fourth degree because I have reasonable doubts about my conclusion that he touched D.S. without his consent. I cannot ignore that these are two male sex offenders locked in an all-male facility. Things happen in such places that don't ordinarily happen elsewhere to reasonable persons. I [am a] reasonable person, and I don't think that anyone who heard the testimony would likely be surprised to hear that this sort of thing goes

on in such places.

"The court takes judicial notice from its dockets that ordinary rules of polite behavior are often ignored in prisons and prison-like facilities. In short, what might not amount to consent elsewhere might be conceived as an invitation in that particular time, place, or circumstance. A smile, a touch, and friendliness in such a place might be perceived as inviting a physical inquiry seeking an elevation of a relationship, or at least, a touch like this one that might be, by prison standards, relatively mild.

"So, I can't say, without a reasonable doubt, that D.S.'s interactions with [the defendant] were not an invitation in these circumstances or an invitation, specifically, of an intimate touch of this type. In reaching my decision, I did not consider the [trial] testimony of [Jane Coady, a therapist employed by the January Center at the time of the events at issue]. I did not think it shed any lights on the subject, for me, and so I don't have to rule on the [defendant's objection concerning the] legal standing of the therapist to testify. And the reason for the disparate results finding that he violated his probation and that he is not guilty of the crime of sexual assault in the fourth degree is because of the differing burdens of proof that apply. So, [although the defendant] is not guilty of the criminal charge, I do find him in violation of probation, and I'll hear argument concerning sentencing on the violations." (Footnote added.)

The defendant brought an appeal from the court's judgment in each of the violation of probation cases. Later, absent objection, this court granted the defendant's motion to consolidate these appeals.

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . .

"The standard of review in violation of probation matters is well settled. To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In

making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Fowler*, 102 Conn. App. 154, 165–66, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007); see also *State* v. *Maurice M.*, 303 Conn. 18, 26–27, 31 A.3d 1063 (2011).

In finding by a preponderance of the evidence that the defendant committed a criminal act by engaging in conduct that constitutes the crime of sexual assault in the fourth degree, the court found in relevant part that he touched D.S. on his clothed buttocks for his sexual gratification. Section 53a-73a (a) provides: "A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ." As relevant, General Statutes § 53a-65 (3) defines " '[s]exual contact' " as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor . . . ." Section 53a-65 (8) defines " '[i]ntimate parts' " to include "buttocks . . . ."

The defendant correctly acknowledges that because the burden of proof applicable in a violation of probation hearing is less than that applicable in a criminal prosecution, he has no basis in the law on which to claim error in the court's judgments arising from its disparate findings in the criminal and probation cases. Rather, the defendant raises a narrow claim that focuses solely on the court's finding that the touching at issue in this case *was for his sexual gratification*. The defendant does not challenge the court's findings with regard to any other aspect of the offense, such as that he made contact with the intimate parts of D.S. or that D.S. did not consent to such contact. In its decision, the court stated in relevant part: "I find that the contact was for sexual gratification. [The defendant] said so." The defendant argues that this subordinate finding of fact was clearly erroneous because it did not have any support in the evidence. The defendant argues that, absent this erroneous finding, the evidence did not otherwise permit the court to infer reasonably that the touching was for his sexual gratification. In this regard, the defendant relies on the undisputed evidence that the touching involved two adult males, the touching incident was brief, D.S.'s buttocks were clothed, and this was not a

case involving the intentional touching of genitalia. Also, in connection with this claim, the defendant asserts that there was no evidence as to the sexual orientation of either adult male involved.

Initially, we agree with the defendant that the court's subordinate finding, *that the defendant had admitted that the touching was for his sexual gratification*, was not supported by the evidence. We reach this determination because the court expressly stated that it would not consider the only evidence that would have supported such a finding. The following additional procedural facts are relevant here. At trial, D.S. testified about the event at issue. In summary, he testified that the defendant touched his clothed "butt" when both he and the defendant were cleaning a bathroom at the January Center, and that he did not consent to this touching.[3] D.S. testified that he brushed the defendant's hand away, told the defendant not to touch him, walked out of the bathroom, and reported the incident to staff shortly after it occurred.

During the trial, the defendant moved in limine to preclude any testimony concerning "any statements" made by the defendant to Coady, the defendant's therapist. The defendant based his motion on the existence of a patient-therapist privilege that he had not waived. After the state called Coady as a witness, the defendant's attorney raised the issue of admissibility covered by the motion in limine. The court indicated that it would permit inquiry of Coady and reserve ruling on the motion. The court observed that, as trier of fact, it would be able to disregard any testimony that it later determined should be excluded under the rules of evidence. After the court permitted counsel to voir dire Coady, it stated that it understood the defendant's argument concerning admissibility, which was based on the absence of any signed waiver by the defendant, and that it would reserve ruling on the motion.

During her subsequent trial testimony, Coady testified that, at the time of the incident underlying this trial, she was employed as a therapist at the January Center and that she provided therapy to both the defendant and D.S. Coady testified that, in her capacity as a therapist, she spoke with both the defendant and D.S. about the touching incident that occurred on May 10, 2013. Relevant to these appeals, Coady testified that D.S. told her that, while he was cleaning a bathroom at the January Center on that date, the defendant "grabbed his clothed buttocks" and that D.S. did not consent to this touching. Additionally, Coady testified that the defendant told her that he touched D.S. on his clothed buttocks and that "for three weeks prior, he had been testing out D.S.'s interest level in having a romantic, intimate relationship."

At the conclusion of Coady's testimony, the court stated in relevant part: "I don't think that this testimony

is terribly important. . . . I see a picture from what D.S. testified to . . . I think I understand the basic claim here, which D.S. says that this touching happened and that he didn't consent. And [the defendant] suggests that there was a whole context and background [between himself and D.S.] that suggested that [D.S.] did consent to it and therefore it's not a violation of the statute. If it's not a violation of the statute, he didn't violate his probation. . . . I've heard [Coady's] testimony, now. . . . It doesn't really add anything to what I've already heard. I think the nub of the whole thing turns on . . . any evidence that [the defendant would] like to show that suggested from the totality of the circumstances that there was consent. I don't think . . . [Coady's] testimony would have any bearing on it, and I'll tell you right now that I'm prepared to ignore it. So, what I'd rather do is, if [the defendant] . . . wants to talk about the context and give this . . . issue of consent [by D.S.], which is your defense, as I understand it, let's do that because I think it would be a more constructive use of time." The next day of trial, the defendant's attorney referred to Coady's testimony in the context of argument. The court reminded the defendant's attorney that it had ruled that it would not consider Coady's testimony. In its decision, the court stated that it had not considered Coady's testimony.

In these appeals, the state correctly recognizes that, in response to the defendant's challenge to the admissibility of Coady's testimony, the court stated that it would not consider such testimony. Yet, contrary to its representations, the court appears to have relied on Coady's testimony in finding facts despite stating in its decision that it did not do so. The state argues that any "procedural" error that occurred in this regard should not affect our consideration of Coady's testimony in determining the sufficiency of the evidence. Essentially, the state argues that the court properly considered Coady's testimony after it "[had] failed to explicitly rule on the defendant's motion" in limine. The state argues that because the defendant has not raised any claim in these appeals related to the admissibility of Coady's testimony, he has abandoned any claim concerning the admissibility of this evidence.[4]

This argument is not compelling. It is clear from our review of the trial transcripts that the court addressed the defendant's motion in limine and his related objections to Coady's testimony by determining that Coady's testimony was not relevant to its analysis.[5] Although the court did not frame its ruling in the clearest legal terms, it is undeniable that the court stated that it would not consider her testimony. The defendant, reasonably relying on those statements by the court, did not raise any further objections to the admissibility of the testimony at trial. It is wholly understandable that the defendant, having obtained a ruling that obviated the need to pursue the evidentiary objection set forth in his

motion in limine, has not raised in the present appeals a claim of evidentiary error concerning the admissibility of that testimony. Such a claim would have been relevant to an evidentiary ruling that was not made at trial and, thus, irrelevant to our assessment of the court's judgment. Our sufficiency of the evidence analysis is confined to the evidence properly admitted at trial. Because the trial court expressly excluded Coady's testimony from the evidence, it should not have considered it in reaching its decision, and we do not consider it here.

The defendant correctly argues that, absent Coady's testimony, there was no evidence upon which the court reasonably could have found that he somehow had *admitted* that his touching of D.S. was for his sexual gratification. Neither party, however, suggests that this determination alone warrants judgments of reversal. The defendant analyzes the evidence in its entirety in determining whether it supported a finding that the touching was for his sexual gratification. He argues that the court's finding based on Coady's testimony was improper and that the sexual gratification element was not otherwise proven. The state argues that, even absent Coady's testimony, the evidence amply supported the court's decision.

In other appeals involving civil matters, this court has observed that an improper finding of fact by a trial court does not automatically warrant a judgment of reversal, but that an appellant must demonstrate that such improper finding was not harmless in light of the court's other findings of fact. The test becomes whether the improper finding undermines appellate confidence in the court's fact-finding process as a whole. This doctrine was set forth in *DiNapoli* v. *Doudera*, 28 Conn. App. 108, 112, 609 A.2d 1061 (1992), in which this court, having discussed the clearly erroneous standard of review, stated: "Where . . . some of the facts found are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Citation omitted; internal quotation marks omitted.) This doctrine has been followed in numerous decisions of this court. See, e.g., *LeBlanc* v. *New England Raceway, LLC*, 116 Conn. App. 267, 281, 976 A.2d 750 (2009); *Doody* v. *Doody*, 99 Conn. App. 512, 518–19, 914 A.2d 1058 (2007); *New Haven* v. *Tuchmann*, 93 Conn. App. 787, 795, 890 A.2d 664, cert. denied, 278 Conn. 903, 896 A.2d 104 (2006); *Lambert* v. *Donahue*, 78 Conn. App. 493, 507, 827 A.2d 729 (2003). We see no reason to depart from this precedent in these appeals from judgments rendered in violation of probation proceedings.[6]

Our careful examination of the court's decision

reflects that the court based its finding that the defendant touched D.S. for his sexual gratification on several subordinate findings of fact; it was not based solely on the erroneous subordinate finding related to Coady's testimony. Because, for the reasons that follow, we conclude that the court's other findings of fact were supported by the evidence, we are not persuaded that the court's error undermines confidence in its fact-finding process or that its error affected the result.

As stated previously in this opinion, the defendant does not challenge the court's finding that he touched an intimate part of D.S. when both he and D.S. were alone in a bathroom in the January Center on May 10, 2013. The defendant testified that he and D.S. were fully dressed and cleaning the bathroom, at which time he patted D.S. on his left buttock. D.S. testified that, during the incident in question, he walked by the defendant in the bathroom and that the defendant put his hand on his "butt." It was undisputed that the defendant and D.S. were residing in January Center because of their criminal history involving crimes of a sexual nature, and the court was free to draw inferences from these facts.[7]

In evaluating the incident in the bathroom on May 10, 2013, the court repeatedly referred to the nature of the relationship that existed between the defendant and D.S. prior to that date. The defendant testified that his prior interactions with D.S. involved D.S. touching his arm, touching his shoulders, and offering him supportive words such as, "I'll always be there for you . . . ." The defendant testified that he believed that his rapport with D.S. included consent to touch his buttocks, though the defendant believed that this touching was not sexual in nature. The defendant testified that he thought that he and D.S. were "joking with each other, and I thought there was a rapport between us."

D.S. testified that, prior to this incident, he was not in a romantic relationship with the defendant. Consistent with the defendant's testimony, he stated that he had touched the defendant's shoulders on the morning of May 10, 2013. Contrary to the defendant's testimony, however, D.S. testified that, prior to this incident, he had not touched the defendant on the arm and that he had not told the defendant that he would always be there for him. D.S. testified that, on May 9, 2013, the day prior to the incident in question, he had brought to the attention of the staff of the January Center his concern that the defendant had been making sexual advances toward him. D.S. testified that he had interpreted prior interactions between himself and the defendant as reflecting the defendant's sexual attraction toward him, but that he did not believe that the defendant would take it to "another level" in the manner that he did by touching his buttocks in the bathroom.

The court, in finding that the touching was for sexual gratification, stated that "[i]t was not a playful pat that

would take place in a sporting environment or any other type of thing." Also, the court stated: "[The defendant] strikes me as a man who knows he went too far, or thinks it was okay to try. D.S., on balance, appeared to have no feeling for [the defendant]."

In making its findings as to the intent, if any, behind the touching, the court was free to make reasonable inferences from the evidence before it. "It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available." (Internal quotation marks omitted.) *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

Viewed in its entirety, the evidence, including the immediate circumstances surrounding the touching as well as the prior relationship between the defendant and D.S., supported the court's inference that the touching was for sexual gratification. The defendant touched an intimate part of D.S. while both he and D.S. were alone cleaning the bathroom in the residential facility in which they were receiving treatment for their histories of crimes of a sexual nature. The defendant was unable to set forth a reasonable explanation for this conduct, and it was not unreasonable for the court to infer that, given the circumstances, which did not involve a sporting or similar type of event, the defendant's touching of D.S.'s intimate parts was motivated by sexual gratification.

The defendant suggests that such a finding concerning sexual gratification was inconsistent with the undisputed evidence that the touching involved two adult males, the touching incident was brief, D.S.'s buttocks were clothed, and this was not a case involving the intentional touching of genitalia. We are not persuaded that any of these facts, whether viewed individually or in their entirety, call into doubt the reasonableness of the court's inference that the touching was for sexual gratification. We observe that sexual contact may occur through clothing. See, e.g., *State* v. *John O.*, 137 Conn. App. 152, 158, 47 A.3d 905 ("[s]exual contact with a victim's intimate parts can be indirect and through clothing as long as it occurs for the purpose of the actor's own sexual gratification or for the purpose of degrading or humiliating the victim"), cert. denied, 307 Conn. 913, 53 A.3d 997 (2012); *State* v. *Alberto M.*, 120 Conn. App. 104, 111, 991 A.2d 578 (2010) (in "determining whether sexual contact occurred, it is of no consequence . . . that the contact occurred through the victim's clothing rather than against her bare skin"). Additionally, we observe that sexual contact is not lim-

ited to contact with genitalia. Section 53a-65 (3), defines "sexual contact" as any prohibited contact with "intimate parts," including buttocks, as defined in § 53a-65 (8).

The defendant also asserts that there was no evidence as to the sexual orientation of either adult male involved. This assertion is inconsistent with the testimony of D.S. that he had interpreted his prior interactions with the defendant, which included touching, as being sexual in nature. Also, the court reasonably could have interpreted the defendant's testimony about his interactions with D.S. prior to the incident, which he described as involving both touching and reassuring words, as evidence—albeit not compelling—that the defendant sought a more intimate relationship with D.S. Viewed in light of these background facts, including the court's finding that D.S. did not consent to sexual contact, the court's additional finding—that the incident in the bathroom was the defendant's attempt to take this relationship "too far"—was not unreasonable, and it supported the court's determination that the defendant touched D.S. for his sexual gratification.

For the foregoing reasons, we conclude that, absent any consideration of Coady's testimony, the evidence supported the court's finding that the defendant touched D.S. for his sexual gratification. Accordingly, we reject the defendant's claim that the court's finding that he violated his probation by unlawfully touching D.S. was clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] Evidence that the defendant was born in 1954 and that D.S. was born in 1989 was not in dispute at trial.

[3] During his direct examination, D.S. used the word "butt" in describing the part of his body that the defendant had touched. During cross-examination, the following colloquy occurred:

"Q. Okay. Now, right after my client allegedly grabbed your butt, and I guess for court purposes I'll be specific, are we talking about what we call the buttocks, the rear end?

"A. Correct.

"Q. That was one grab?

"A. Correct."

[4] Consistent with its argument, the state relies on *State* v. *Carey*, 228 Conn. 487, 498, 636 A.2d 840 (1994), for the proposition that, even if the defendant was able to succeed in demonstrating that reversible error occurred in connection with the improper admission of Coady's testimony, he would be entitled to a new hearing, but not a judgment of acquittal.

[5] Although Coady's testimony appears to have been relevant to the central issue in this case, consent, we need not address the propriety of the court's determination in this regard.

[6] This court has observed that "a violation of probation proceeding is not a criminal proceeding but is instead more akin to a civil proceeding . . . ." *State* v. *Lantz*, 120 Conn. App. 817, 822, 993 A.2d 1013 (2010).

[7] D.S. testified that he had been convicted of conspiracy to commit robbery in the first degree and sexual assault in the second degree. The defendant testified that, in two separate cases, he had been convicted of risk of injury to a child, and that he had been convicted of sexual assault in the fourth degree.