******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TIMOTHY TOWNSEND, JR. *v.* YADIRA
STERLING ET AL.
(AC 36619)

Lavine, Mullins and Bishop, Js.

*Argued February 20—officially released June 9, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Wahla, J.)

*Timothy Townsend, Jr.*, self-represented, the appellant (plaintiff).

*Neil Parille*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellees (defendants).

*Opinion*

LAVINE, J. Although prisoners lack a due process liberty interest against administrative segregation, they "retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available." *Sandin* v. *Conner*, 515 U.S. 472, 487–88 n.11, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

The self-represented plaintiff, Timothy Townsend, Jr., appeals from the summary judgment rendered by the trial court in favor of the defendants.[1] On appeal, the plaintiff claims that the court improperly determined that he did not have a liberty interest with respect to the prison disciplinary sanctions imposed against him and improperly granted summary judgment in favor of the defendants.[2] We affirm, in part, and reverse, in part, the judgment of the trial court.

The plaintiff commenced this action in November, 2007, and filed several amended complaints. The operative amended complaint is dated October 11, 2011. The plaintiff, who was at all times relevant incarcerated in the MacDougall-Walker Correctional Institution in Suffield, alleged that the action was commenced pursuant to 42 U.S.C. §§ 1983 and 1988. The plaintiff also alleged that the defendants violated his right to due process secured by the fourteenth amendment to the United States constitution and article first, § 20, of the constitution of Connecticut, and the rules of the Department of Correction, specifically, administrative directives 2.17, 9.5, and others.

In support of his claims, the plaintiff alleged the following facts. On May 19, 2007, the defendant Ed Hernandez issued a disciplinary report (ticket) against the plaintiff for disobeying a direct order. The plaintiff took the ticket to a hearing conducted by the defendant Yadira Sterling on June 14, 2007. He alleged that Sterling "filled in for the original hearing officer who is the 'normal' disciplinary hearing officer." At the hearing, the plaintiff was not permitted to call any witnesses or to present documentary evidence. Sterling found the plaintiff guilty, and sentenced him to ten days in punitive segregation and fifteen days confinement to quarters.

The plaintiff appealed Sterling's guilty finding with the assistance of his mental health social worker, who placed the appeal in the prison's "appeal box" on or about June 20, 2007. The defendant Wayne T. Choinski denied the plaintiff's appeal on August 14, 2007. Choinski addressed only four of the issues submitted by the plaintiff in the appeal.

The plaintiff alleged that Sterling was biased against

him due to the fact that he had served her with a writ of mandamus on May 22, 2007. The other defendants also were served with the writ of mandamus, which, the plaintiff alleged, fueled a conspiracy to retaliate against him by depriving him of his right to due process.[3]

In his prayer for relief, the plaintiff sought an injunction compelling the defendants to create an independent oversight board to review disciplinary reports, also known as tickets, and institutional due process. He also prayed for compensatory and punitive damages from the defendants in their individual capacities, and compensatory damages for the loss of his personal property.

The defendants denied each paragraph of the amended complaint[4] and alleged five special defenses.[5] On September 11, 2013, the defendants filed a motion for summary judgment in which they represented that the plaintiff had alleged that the defendants "gave him a Disciplinary Report without the Due Process allegedly required by the United States Constitution and contrary to the mandates of the Department of Correction's Administrative Directives." The defendants' motion for summary judgment was predicated on their understanding of the factual basis of the plaintiff's cause of action, i.e., "on or about May 17, 2007, the [Department of Correction] issued a Disciplinary Report [ticket] . . . for Disobeying a Direct Order, for which he was found guilty. . . . He further alleges that he was not given due process allegedly required by [the applicable] Administrative Directive . . . . [Department of Correction] records indicate that the plaintiff received this [Disciplinary Report] on May 19, 2007, and that he received sanctions of: (1) punitive segregation for ten . . . days; and (2) confinement to quarters for fifteen . . . days. The plaintiff did not lose good time [credits] as a result of this ticket." (Citations omitted.) The defendants did not challenge the factual allegations of the amended complaint, but claimed that the allegations were legally insufficient.

In the memorandum of law accompanying the motion for summary judgment, the defendants argued that because the plaintiff did not lose any good time credit, he was not deprived of the right to due process by not being able to appeal the ticket he was given for having disobeyed the order from Hernandez.[6] Moreover, they argued that punitive segregation, confinement to quarters, and loss of telephone privileges do not affect any protected liberty interest, citing *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 680, 667 A.2d 304 (1995). Because the plaintiff did not lose any good time credit, the defendants continued, there was no reason for the court to order the defendants to expunge the ticket from the plaintiff's record.

The defendants also argued that Choinski's failure to respond to the plaintiff did not create a cause of action, citing *Fernandez* v. *Armstrong*, Docket No. 3:02cv2252

(CFD), 2005 U.S. Dist. LEXIS 4958, *26 (D. Conn. March 30, 2005) ("[t]his district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right"). The defendants also argued that the plaintiff was not entitled to injunctive relief in the form of an independent oversight board, citing *Overton* v. *Bazzetta*, 539 U.S. 126, 132, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003).[7]

The plaintiff opposed the defendants' motion for summary judgment, claiming that not only were there genuine issues of material fact that needed to be determined,[8] but also that the defendants' claims were legally incorrect. He argued that his cause of action was broader than the liberty issue of whether he lost good time credit and that a prisoner may state a claim for violation of due process when the prisoner's liberty interest at issue is independently protected by the constitution, citing *Sandin* v. *Conner*, supra, 515 U.S. 472. He also argued that the first amendment forbids prison officials from retaliating against a prisoner for the exercise of the right to free speech, citing *Crawford-El* v. *Britton*, 523 U.S. 574, 588 n.10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (retaliation offends constitution in that it threatens to inhibit exercise of protected right).

The plaintiff contended that a prima facie case of first amendment retaliation is established when "(1) . . . the speech or conduct at issue was protected, (2) . . . the defendant[s] took adverse action against the plaintiff, and (3) . . . there is a causal connection between the protected speech and the adverse action." (Internal quotation marks omitted.) *Morales* v. *Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002). The plaintiff cited the following factual allegations underlying his retaliation claim: the defendant Pablo Correa destroyed his boom box in response to the dismissal of a ticket the plaintiff had received for having made a threatening statement; the defendant Robert Jasnec gave the plaintiff a ticket for interfering after the plaintiff complained to Lieutenant Allen about needing a coat for outdoor recreation; the defendant Maureen Berube-Allen, a correction officer assigned to investigate disciplinary reports, denied the plaintiff the right to call Allen as a staff witness; the defendant Maribel Berrios denied the plaintiff the right to make telephone calls because the plaintiff previously had filed a complaint against Hernandez; and Sterling was not an impartial hearing officer. See footnote 3 of this opinion.

The court granted the defendants' motion for summary judgment in a memorandum of decision issued on February 18, 2014. The court concluded that the defendants did not violate the plaintiff's rights to due process because the plaintiff had no liberty interest

that was infringed by the issuance of the ticket from Hernandez, which did not result in the loss of good time credit. The court also concluded that the ticket need not be expunged because a prisoner does not have a liberty interest in remaining free from tickets that do not result in the loss of good time credit. Finally, the court concluded that it had no authority to create an oversight board to ensure that the Department of Correction provides prisoners due process. The court did not address the plaintiff's retaliation, free speech, or property loss claims. The plaintiff filed a motion for articulation, which the court denied.[9] The plaintiff, however, failed to file a motion for review.

The plaintiff thereafter appealed to this court, claiming that the trial court improperly granted the defendants' motion for summary judgment. See footnote 1 of this opinion. We agree and conclude that the court improperly granted the defendants' motion for summary judgment, save for that portion of the judgment regarding the plaintiff's request for an injunction. We agree that the court had no jurisdiction to appoint an independent oversight board over the Department of Correction. We further conclude that the court improperly granted summary judgment on the entire complaint because it failed to address the plaintiff's claims for damages.

We begin with the well known standard of review applicable to summary judgment. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Byrne* v. *Grasso*, 118 Conn. App. 444, 447–48, 985 A.2d 1064 (2009), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010).

The first issue for this court to determine is whether the trial court properly concluded that the defendants did not violate the plaintiff's due process rights because he did not lose any good time credit when he was sanctioned for disobeying a direct order. "The fourteenth amendment provides, in part, nor shall any State deprive any person of life, liberty or property, without

due process of law . . . . The interest at stake in the present proceeding is [the plaintiff's] liberty interest. There are two elements which must be established in order to find a due process violation. First, because not every liberty interest is protected, [the plaintiff] must establish that he has a liberty interest that comes within the ambit of the fourteenth amendment. . . . If it is determined that a protected liberty is implicated, then the second element that must be addressed is what procedural protections are due." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 236 Conn. 561, 568–69, 674 A.2d 416 (1996).

"[T]o state a claim for denial of procedural due process . . . a prisoner must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). "A [prisoner] has no right to due process [at his disciplinary hearing] unless a liberty interest has been deprived . . . ." (Citation omitted; internal quotation marks omitted.) *Coleman* v. *Commissioner of Correction*, 111 Conn. App. 138, 141, 958 A.2d 790 (2008), cert. denied, 290 Conn. 905, 962 A.2d 793 (2009). "To constitute a deprivation of liberty, a restraint must have imposed an atypical and significant hardship . . . in relation to the ordinary incidents of prison life. . . . Additionally, the [prisoner] must establish that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." (Citation omitted; internal quotation marks omitted.) Id., 141–42.

In the present case, the plaintiff alleges that the defendants retaliated against him for the exercise of his right to free speech. "In order to state an actionable claim for retaliation, [the plaintiff] must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." (Internal quotation marks omitted.) *Morales* v. *Mackalm*, supra, 278 F.3d 131. The essence of the plaintiff's allegations is that the defendants retaliated against him for filing a grievance.[10] As such, the plaintiff has alleged facts that the defendants' retaliation had a chilling effect on his first amendment rights to free speech, a protected liberty interest. See *Crawford-EL* v. *Britton*, supra, 523 U.S. 588 n.10. The trial court therefore improperly rendered summary judgment on the ground that the plaintiff had no liberty interest in being free from tickets that did not result in the loss of good time credit.[11] The summary judgment on this ground is reversed and the case is remanded to the trial court so that discovery may proceed.

We also agree that the court improperly rendered summary judgment as to the entire amended complaint.

The court failed to consider the plaintiff's state law claims concerning the loss of his property, i.e., his boom box.

As to the plaintiff's claim related to his injunction request for an independent oversight board to ensure that the Department of Correction provides prisoners due process, the court properly rendered summary judgment in favor of the defendants on that claim. "[C]ourts are particularly ill equipped to deal with [prison] problems . . . ." (Citation omitted; internal quotation marks omitted.) *Shaw* v. *Murphy*, 532 U.S. 223, 229, 121 S. Ct. 1475, 149 L. Ed. 2d 420 (2001). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is . . . a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner* v. *Safley*, 482 U.S. 78, 84–85, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

The judgment with regard to injunctive relief and the claimed failure to follow Department of Correction administrative directives is affirmed. The remainder of the judgment is reversed and the case, as it relates to the tort and § 1983 discrimination claims, is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] The defendants were at all times relevant employees of the Department of Correction: Yadira Sterling, disciplinary report adjudicator; Maureen Berube-Allen, disciplinary report investigator; Wayne T. Choinski, former Northern District Administrator; and Pablo Correa, correction officer; Maribel Berrios, correction officer; Ed Hernandez, correction officer; and Robert Jasnec, correction officer.

[2] In his brief, the plaintiff identified the following issues on appeal: (1) "the trial court erred when holding that the plaintiff had no right to be free from retaliation, in the form of a [ticket], for participating in protected conduct"; (2) "whether the trial court was correct in considering issues not properly before it"; and (3) "whether the trial court properly granted qualified immunity, when that claim was never raised by the defendants in their motion for summary judgment."

A more accurate statement of the plaintiff's second claim is that the court improperly dismissed his entire cause of action, including claims not addressed by the defendants in their motion for summary judgment.

We reject the plaintiff's third claim. The trial court did not use the term qualified immunity or address that legal defense in its memorandum of decision.

[3] The plaintiff also alleged a longer history of tickets and retaliatory interaction with the defendants. A detailed recitation of these allegations is necessary to put the plaintiff's claims in context. On the night of November 14, 2006, the defendant Pablo Correa, a correction officer, accused the plaintiff of having made a threatening statement and issued the plaintiff a ticket for threatening. The plaintiff was placed in the restrictive housing unit. The threatening ticket, however, was dismissed eighteen days later when a staff witness came forward and revealed that Correa randomly had picked the plaintiff "to take the fall" and to be made an example. When the plaintiff was released from the restrictive housing unit, he discovered that his boom box had been destroyed.

The plaintiff also alleged that on November 22, 2006, the defendant Robert Jasnec, a correction officer, came to the plaintiff's cell in the restrictive housing unit and asked him if he wanted to go outdoors for recreation. When the plaintiff stated that he wanted to go outdoors, Jasnec informed him that there was no coat available for him to wear and that it was cold outside. If the plaintiff went outside, he would have to stay out for the entire

one hour recreation period. The plaintiff questioned where the coats were, and Jasnec stated that they were in the laundry. The plaintiff saw a laundry worker and asked why the coats were being washed. The laundry worker allegedly stated that coats were not washed in the winter, only in the months when they are not needed, i.e., summer. Jasnec became angry with the plaintiff, and returned him to his cell, thereby denying him outdoor recreation. Correction Officer Bogalhas accompanied Jasnec as he returned the plaintiff to his cell.

Two hours later, while Lieutenant Allen was touring the restrictive housing unit, the plaintiff informed him of his interaction with Jasnec. Allen stated to the plaintiff that coats always were available for outdoor recreation. Jasnec then stated to Allen that he had intended to look for a coat for the plaintiff after he had placed the plaintiff outdoors. The plaintiff informed Allen that that was not the case. The plaintiff alleged that one hour after Allen had left the restrictive housing unit, Jasnec gave him a ticket for interfering with safety and security (interfering ticket) because he had "attempted to snatch away from Jasnec and leave" the restrictive housing unit to look for a coat.

The plaintiff further alleged that the defendant, Maureen Berube-Allen, a correction officer assigned to investigate disciplinary reports, came to see him about the interfering ticket on November 22, 2006. The plaintiff requested that Allen be called as a staff witness at the hearing, but Berube-Allen refused to allow Allen to be called as a witness. The plaintiff, therefore, refused to sign the investigative report and told Berube-Allen that he would have his advocate interview Allen. When the plaintiff's advocate, Boland, interviewed the plaintiff on November 28, 2006, Boland informed the plaintiff that Allen could not be listed as a witness. The plaintiff, therefore, refused to sign the advocate investigation report.

At the hearing on the interfering ticket, the plaintiff informed Sterling, the hearing officer, that he was denied the right to call Allen as a staff witness. Sterling stated that it was too late to call Allen. The plaintiff alleged that Berube-Allen stated to him that "you're going to beat the 'threats' [ticket], but we're not going to let you win" the interfering ticket. Berube-Allen attempted to persuade the plaintiff to plead guilty to the interfering ticket. On November 30, 2006, Sterling found the plaintiff guilty as to the interfering ticket.

The plaintiff filed an appeal after being found guilty as to the interfering ticket. According to the plaintiff, Berube-Allen collected the appeal form from the prison's "appeal box," but never processed or forwarded it to the district administrator. The plaintiff filed a complaint and was given permission to file another appeal form. The plaintiff claims that his second appeal form was not processed and that Berube-Allen was responsible for collecting and recording disciplinary appeal forms.

In February, 2007, the plaintiff sent a letter to the defendant Wayne T. Choinski, former Northern District Administrator, informing him that Berube-Allen had not processed his interfering appeal form. The plaintiff explained the grounds for his appeal. The plaintiff alleged that he had reason to believe that Choinski received his correspondence but that Choinski did nothing to remedy the due process violation.

The plaintiff also alleged that in April, 2007, Maribel Berrios, a correction treatment officer, refused to permit him to make a telephone call because she did not like it that he had filed a grievance against Hernandez. According to the plaintiff, Berrios took it upon herself to deny him telephone privileges and to delay his receipt of personal care items to avenge his grievance against Hernandez.

[4] The complaint is pleaded in the style of complaints filed in the United States District Court.

[5] The defendants alleged five special defenses: (1) the court lacked jurisdiction because the defendants are immune from suit pursuant to General Statutes § 4-165; (2) the complaint failed to state a claim for which relief may be granted; (3) the plaintiff failed to obtain permission to sue the state pursuant to General Statutes § 4-160 (b); (4) as to the equitable relief and money damages the plaintiff sought, the court lacked subject matter jurisdiction pursuant to the doctrine of sovereign immunity; and (5) the plaintiff failed to exhaust his administrative remedies.

[6] A prisoner may be deprived of good time credit only if the prisoner is offered procedural due process protection. See *Mitchell* v. *Commissioner of Correction*, 94 Conn. App. 210, 217, 893 A.2d 445, cert. denied, 278 Conn. 917, 899 A.2d 622 (2006), citing *Wolff* v. *McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and *Jolley* v. *Commissioner of Correction*, 60 Conn. App. 560, 561, 760 A.2d 146 (2000), cert. denied, 274 Conn. 913, 879 A.2d 892 (2005).

[7] The defendants' motion for summary judgment and memorandum of law did not address the plaintiff's free speech, retaliation, or personal property claims.

[8] His memorandum of law in support of his objection to the defendants' motion for summary judgment made clear that the defendants failed to

submit affidavits or other evidence to demonstrate the absence of a genuine issue of material fact.

[9] In his motion for articulation, the plaintiff asked the court to articulate the ground for granting summary judgment in favor of Correa, who was being sued for retaliatory destruction of property and filing a false ticket, which are two distinct claims the court did not address. He also asked the court to articulate the basis for granting summary judgment in favor of Berrios, whom he sued for her part in allegedly failing to let him make a telephone call for nearly one month after he filed a grievance against Hernandez.

[10] In his appellate brief, the plaintiff acknowledges that his amended complaint did not explicitly allege that the defendants violated his first amendment right to free speech. He argues, however, that it was not legally necessary to do so as long as he pleaded facts demonstrating that he "was subject to adverse action as a result of engaging in protected speech." See *Austin* v. *Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

We agree that the amended complaint is not artfully pleaded. The plaintiff, however, has represented himself throughout the proceedings, and "[i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party." (Internal quotation marks omitted.) *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 861, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005). We have reviewed the allegations of his amended complaint and conclude that the plaintiff alleged facts that were sufficient to put the defendants on notice that he was claiming that they had retaliated against him for filing a grievance, in violation of his right to free speech. See footnote 3 of this opinion. Compare *Austin* v. *Terhune*, supra, 367 F.3d 1171 (complaint did not expressly refer to first amendment but alleged facts that plaintiff was punished for filing grievance).

[11] During oral argument before this court, counsel for the defendants acknowledged that a prisoner has a liberty interest in the rights guaranteed under the first amendment.

———————————————————